WESTPHAL, Appellant, v. CANTWELL-PETERSON CLINIC and others, Respondents.

*No. 342. Argued January 30, 1973.—Decided February 27, 1973.*
(Also reported in 204 N. W. 2d 491.)

For the appellant there was a brief by *Jerome E. Randall*, of Milwaukee, and *Robert M. Gonyo*, of Berlin, and oral argument by *Mr. Randall*.

For the respondents there was a brief by *Fulton, Menn & Nehs, Ltd.*, attorneys, and *Peter S. Nelson* of counsel, all of Appleton, and oral argument by *Mr. Nelson*.

WILKIE, J. The sole issue dispositive of this appeal is whether the trial court erred in granting summary judgment to the defendants on the basis that the plaintiff, by his guardian *ad litem* and his parents, executed general releases in June, 1967, which contain no reservation of rights to assert a malpractice claim against the defendants.

This case is controlled by the new rule adopted in the *Krenz Case*,[2] decided today, with respect to the effect of a general release given in settlement of a claim for damages upon a claim for alleged medical malpractice occurring before the execution of that release but shortly after the act of negligence by the original tort-feasor.

The facts here present an unquestionable case for invoking the new rule which provides that a general release of the original tort-feasor does not release a malpractice cause of action against the doctor (or another allegedly guilty of medical malpractice) for damages which might be recovered against the original tort-feasor, in the absence of a clear and expressly stated intention to do so.[3] It is abundantly clear here that the plaintiff had no knowledge of the alleged malpractice at the time the

[2] *Krenz v. Medical Protective Co.*, ante, p. 387, 204 N. W. 2d 663.
[3] *Id.* at pages 400, 401.

general release was executed and the minor settlement approved by the Shawano county court. It is obvious that the sum of money paid as a result of the approved settlement was not compensation for the malpractice claim.

In fact, at the proceedings on June 9, 1967, the entire settlement was presented and approved on the basis there was only a $20,000 maximum to work with. The trial court said:

". . . Upon the record and the evidence, the court finds and determines that the settlement made is [a] reasonable one under the circumstances. That the parents of this young man are in accord with this settlement. I can understand that they would not be happy about it, nor would any of us be happy about it, but I think they have chosen wisely, to accept this. . . .

". . . I want to say this to Kenneth. You have suffered a great deal more injury and damage than you are getting paid for. Try to look on the bright side, at least you are getting something. It might have occurred while you were riding with someone who had no insurance and you would have gotten nothing."

It would be ridiculous to argue that paying out $16,000 in return for the general release and approved court settlement, given the severity of plaintiff's injuries, could in any way lead to the possibility of a double recovery in malpractice litigation. We think that as a matter of law there obviously was no intent to release the malpractice cause of action and the cause must therefore be reversed and sent back to the trial court for further proceedings. The plaintiff should be given the opportunity to prove his claim that there was medical malpractice which contributed to his paraplegia.

*By the Court.*—Judgment reversed, cause remanded for further proceedings.